Good morning, Your Honors. If it may please the Court, my name is Ernest Franceschi. I am counsel for both appellants. I'm also the party in Franceschi v. Chiang. I think the briefs are very extensive here, very thorough, probably a couple hundred pages here, and the issues are discussed in great detail, and I really don't have anything to add. I do want to point out a subsequent to the close of briefing, in my case, I was removed from the top 500 list without any explanation, just like Dr. Diorio was, and I don't know if this was an attempt to moot the issue or not, but it happened after briefing, so we couldn't address it, and other than that, unless the Court has questions, I'll be happy to answer them. Can I just ask a couple of factual questions? In your case, do I have it correct that there was a period of 20 years from the notice that you're on the bad boys list until the revocation of a driver's license? No. The legislation came into effect in 2012, and then within a year, I was put on the list. How much time elapsed between, and you received notice of going on the list, correct? I believe in 2013. Okay. How much time passed between that notice and the revocation of the license, your license? I believe it's a period of months, five, six months, something like that. And is it a similar distance in time in the other case? I believe so. I think there's a statutory time period that the debtor has to try to pay off his obligation and get off the list, and it's a very short amount of is insufficient in terms of due process for the revocation of a license. Well, the argument with regard to the notice and opportunity to be heard is that there is no opportunity for a hearing to get off the list, but the District Court in both cases... When you receive notice, the notice says you're on the list. You're on the list, and there's... It doesn't say you can come in and talk to us about whether you should be on the list or not, or you're going to go on the list in 15 days if we don't hear from you. The notice says you're on the list. You're on the list, and it says if you have questions, call this number, and then there's four ways to get off. Payment in full, filing for a hardship exemption... Did you file for a hardship exemption for financial disability? I did not, because the Second District Court of Appeal pretty much determined that it's illusory. They have no... The FTB has no procedures to process hardship exemptions, and the Berjickians were denied hardship exemptions just arbitrarily, so it would be pointless. So with those rulings, there was no reason to go that direction. So what years... Tell me the years in which you just didn't pay your taxes, you didn't pay your state taxes. What years were those? Well, first of all, I vigorously dispute that I owe any taxes. These aren't from returns. These are notices of proposed assessments based upon a theoretical model of what the average lawyer earns. I don't know what the average lawyer is. You filed returns for all these years? I have principle of my law corporation, I set my salary below the reporting level. I'm the lowest earner in my office. My secretaries and legal assistants make many times what I do. So there was a deposition of the FTB person most knowledgeable that confirmed, if you're below a certain reporting threshold, first of all, you don't owe any tax and you don't need to file a return. And this is what's happened here. So we've got all these NPAs that are not based on actual income, but some theoretical formula that they refused to produce in the litigation and discovery, so we don't know what it is, we can't challenge it. So you filed returns after you received the notice? I filed returns, a whole bunch of them, going back multiple years. Did you or did you not file returns after you received the notice of deficiency? No, I filed it within the last two years. The government says in their brief that several notices of deficiency came out after 2012. Would you have had a chance to challenge prior years before the FTB once you got those post-2012 notices, or would you be limited to challenging just the prior year or the prior couple of years? Well, after a notice of an NPA is put out, you have a finite amount of time to challenge it. I believe it's 60 days, and if you fail to do so, it's final. You can't subsequently challenge it. Okay, so from 1995, I think, is when the government says that was the beginning when you didn't file tax returns, and they started doing the notices of assessment, or whatever the terminology is, and so you were determined to be deficient, I guess, in absentia. You never challenged those, is that correct? These are very small amounts, and the effort to challenge, there were like 5,000, 10,000, something like that, so it becomes a cost-benefit issue. Am I going to spend 25 to 50 thousand dollars to challenge these assessments when there's really not much at stake other than the fact that you're going to have a judgment against you? And that's the basic problem here, because there was no notice that if you don't challenge those assessments and deal with them right then and there, hey, you know what, 20 years down the road, you may have your law license suspended, or your medical license, or your state-issued driver's license. None of that was on the horizon, and that's the problem here. There was an opportunity for a hearing at that point in time to challenge the assessments, but there's no opportunity for a hearing commensurate with the deprivation of the vested rights. What case says that if you're offered a hearing, but you don't take advantage of it, you're determined to be liable in absentia, essentially, and then subsequently when the incentives change, you're entitled, I guess, to a collateral attack, because what you want is a hearing where you can collaterally attack these assessments. What case says that that raises a due process issue? That's Matthews v. Attridge. Okay, so there's no case, because that case doesn't involve incentives. I understand your incentive changed once the 2012 statute was enacted, and had you known that you were at risk of losing a license, you would have had more incentive. So that gives you a right to now go back in time and collaterally attack those FTP determinations. Right. It's a fundamental fairness issue. Let's say, for instance... Okay, so you don't know, just to clarify, you don't have a case on point that has similar facts to that, that establishes a due process issue? We can't find any with those exact facts, but the Supreme Court ruling in Matthews v. Attridge alludes to that, that, you know, the hearing has to be contemporaneous with the deprivation, either before or after. We don't really care which year, but there was no hearing. And what's happened... There was an opportunity for a hearing. I mean, that's the thing that concerns me, is that there was an opportunity for a hearing. You chose not to use it. The determination became final, and now the deprivation is based on these undisputed facts of these final determinations. Right, but... So why should you have a second chance to challenge those determinations? Because it was unforeseeable that these consequences would result from failure to challenge. What were the pre-2012 consequences that you were aware of? Well, it could become a superior court judgment, and they can attach a property, file liens against you. Those are the only consequences. But let's say, for instance, this wasn't a driver's license issue. Let's say the legislature decided, anybody on the top 500 list, we're going to make that a list. Now, who could foresee that? I mean, what if... And you have no ability to pay. You're going to end up in prison. That's fundamentally unfair. What if they say, well, you know, if you're on that top 500 list, we're going to revoke your right to vote. Fundamental right. Could anybody possibly foresee that 20 years ago? The taxes we're talking about are California income taxes, correct? Correct. And what were the years that you did not file? Well, starting in 95, I believe, through like 2011 or 12. So roughly from 95 to 11 or 12, you filed no California income tax return? I didn't have to. That's... Did you, during those years, file federal returns? It's the same thing. You're below the threshold reporting requirement. You don't have to. It's somewhere around 9, 10, 11,000 changes year to year, but I've always operated under a professional corporation as an employee, and I set my salary. So I'm not compensated by wages. And there's nothing wrong with that. Bill Gates makes a dollar a year. Not that I'm Bill Gates, but, you know, there's a lot of very well-known influential corporate executives that take no salary or a nominal salary, and there's nothing wrong with that. And it seems to me like we're being demonized for doing what a lot of these people routinely do that's quite appropriate here. After the 2012 legislation became effective, were you made aware of that? I was not immediately aware of that. When you became aware of it? I became aware of it when I got a notice from the FTB that... You've interrupted my question. I'm aware of the 2012 legislation and its consequences. Did you take any action? Yes, I filed this lawsuit. I immediately filed suit for injunctive relief. Unless the court has further questions, I'd like to save the remaining time for rebuttal. All right. Good morning, Your Honors. Deputy Attorney General Matthew Hine for the appellees in the Franceschi matter. I'm joined by my colleagues from the Office of the Attorney General. I'll be taking about 15 minutes on the Franceschi matter. My colleagues have agreed to divide 10 minutes for Ms. From 1995 through 2012, Appellant Ernest Franceschi, a practicing attorney, failed to pay any state income taxes or even file a tax return. You say he didn't know it, didn't know anything. What's he supposed to do? Well, there's no harm in filing a tax return that says, I don't know anything, if it's a truthful statement. But if you're not required to file it because you're below the minimum, you're not required to file a tax return if you didn't know any money. Well, I think a sensible person would for the following reason. Because after you fail to file the return, the FTB is required to make an assessment about whether it's likely that the person owes zero taxes or whether it's likely that the person is a tax protester and is trying to get away with not paying anything. So for each of those 18 years, after there was no tax return filed, the Franceschi's profession is and determined what they thought his return was likely as per court-approved procedures. And they determined that he made some substantial money, as most attorneys do. And then they gave him notice of the assessment and an opportunity to respond to it. And for each of those 18 years, Mr. Franceschi failed to respond. And let me note that 494.5, the statute in question was in place. Does that make a difference? Because he wouldn't have had a chance to, he says he wouldn't have had a chance to argue about the ones that were prior to 2012. Is that correct? Is he correct in that? He's correct in that the, at the assessment hearing... He said they were final, the ones before... They were final. And his opportunity as to those... If we only took the 1995 through 2010, you're asking for those amounts, is that enough to get you on the list for Mr. Franceschi's case? No, I'm saying, could he be put on the list for post-2012 failures? So in other words, pre-2012, he didn't know what the consequences were. I, I, I, no, I, I... Yeah, I mean, those would be too small. So it's the whole extent of them. However, and this is a really important point, for all those prior amounts, there was a fully adequate remedy that Mr. Franceschi had. So he didn't take it. He didn't take advantage of it. So it became final in, in absentia, basically. It's an in absentia ruling. But it's a final assessment, but it's not a final ruling. Mr. Franceschi has the opportunity, as every taxpayer does, to pay the tax and file a refund action. And the California Supreme Court, the U.S. has a fully adequate due process for taxes. For taxes, the state, the, the, the judiciary has allowed the state to collect the tax firsts and let the taxpayer raise whatever kind of arguments they have about, well, I don't get paid anything. Well, look, I, I hire a Price Waterhouse Coopers to do my tax return and do my taxes. And my, my accountant at PWC calls me up and says, you know, you don't, we've looked at all your papers. We looked at your LLC structure and so forth and so on. And you don't owe any state taxes. Why am I not entitled to rely on that? I think you would be entitled to rely on it. And if there was an assessment against you, I would, I think your accountants at PWC would say, you should really fight this assessment. We're happy to demonstrate that you don't owe anything. But what we have in the case of Mr. Didn't file any tax returns. And I don't think he's here to tell you that his accountant told him that it was fine. A hypothetical. I understand. Tell me about this refund action. So he can go and challenge all of these prior, starting in 95, all of these prior assessments. Is that correct? Correct. But only if he pays first. Correct. Okay. So, so now we have in 2012, um, he's put on the top 500 list and he's deprived of his driver's license. And so he wants to have the opportunity to collaterally challenge the, um, assessments, the absentia assessments, um, before his driver's license is taken away. Correct. Um, so what's wrong with that? Why, why shouldn't he be able to do that? I mean, we have that in other contexts where you, you can collaterally challenge a, um, a prior ruling when, for example, there's criminal penalties in the immigration context. He has a full opportunity to collaterally challenge it in the superior court. If he pays his taxes, his license will be, licenses will be restored to him immediately while, without prejudice to the action that's pending in the superior court. Immediately he will get his license back and he can raise whatever he wants to a real judge and challenge it all the way up to the Supreme Court. So the remedy... All the way back? Can he challenge all the way back to, to, uh, 1995? Correct. The statute of limitations for a tax refund action is either six months or a year after the tax is paid. After you pay the tax, you can file your claim for refund. And as soon as your claim for refund is denied, if it's denied, you can file your action in superior court and get a judge to hear your action and give you your, and you, and whether or not the judge agrees with you or disagrees with you, you'll get your license back because you've paid your tax. So if that, um, you, if the person has a wherewithal to, to pay the taxes, then that might be an adequate remedy is, is what I'm hearing you suggest. But what if the person doesn't? Now, the other complaint is the, um, financial disability prong of the statute is inadequate. It doesn't, uh, it, it gives unlimited unfettered discretion to the FTB and doesn't, um, um, provide any procedures. There are three responses to that. The first is, and I'm, you're not going to want to hear this, but the Supreme Court has said, it really doesn't matter from a due process perspective, whether or not you can afford to pay the tax. As a due process, from a due process perspective, you have this ability and we're not going to parse out whether or not you can afford to pay because you have this ability. And what case are you relying on for that? I would say, so as to the afford, the affordability prong, I would say modern barber colleges versus California employment state commission, um, as to the S the Supreme court ruling that this is a adequate remedy, uh, even in cases where you really, you know, it would render you insolvent.  I'm fully cognizant that I am wasting time. I hope my co-counsel will be able to find it while I'm... Why don't you just continue and find it when you, when your co-counsel is talking. Sure. So that's one. Two is, he's got this financial hardship, this financial hardship remedy, and he never applied for it. So, I mean, he makes... You're saying it's just not in play in this case. It's not in play in this case because he never asked for it. And he says, well, the reason I didn't do it is because the Brzezinski decision came out and the Brzezinski decision said that it's basically, you know, totally illusory. But if you look at when the Brzezinski decision came out, it was January 12, 2015. I just looked at it at the table and his complaint was filed March 14, 2014. So there's something wrong with that timeline. The third thing I want to say is that whatever the law used to be at the time that Brzezinski decision came out, the FTB has changed and now has a fully, two lengthy regulations on point, which give, which highly constrain the FTB on who they can give this financial hardship to and require them to give a financial hardship remedy to certain taxpayers. And if they're unsatisfied with that, there's a right of appeal to the taxpayer associate. Let me give you the site on those so you guys can take a look at them. 18 CCR, 19, 1951 and 19, 1952. Suppose the 2012 legislation says you can't hold a driver's license or any professional license. Would that raise due process problems? Not under the facts presented here because... Hypothetical question. Yeah, I understand. Under the, well, I just want to make sure I fully understand the hypothetical. The hypothetical, what the hypothetical is putting to you is suppose it was the imposition in 2012 of a consequence that was even more drastic than driver's license. Loss of the right to vote. I think that the loss of the right to vote is a consequence of the imposition of the right to vote creates more fundamental problems than the right to drive. And it may... Obviously, but the question is, does that violate due process? I think, I don't think it would violate due process. I think it might violate other rights that one might have under the whether or not one has been given a fair and adequate opportunity to litigate the issue. And because Mr. Franceschi has the opportunity at the time of the assessment and both after the potential, the full consequences could come into play, that procedural due process is met. Now, maybe the court might think, well, there's taking away a voting right is unrelated to the collection of taxes. What about a license to practice law? Yeah, I think that the FTB can and does. Well, I think that the FTB would say that there is a fully adequate opportunity at the time of the assessment and after the full consequences become known to pay your taxes and get your law license back. And you're saying the refund action, as I heard you previously, that the person would have a full opportunity to litigate whether in fact those taxes were owed. Absolutely. De novo, without regard to what the FTB previously found. If I may, I'd like to at least address an issue that counsel raised about being removed from the list. I don't really think that's appropriate to address here because it wasn't in the complaint. And this is on a, Franceschi matter is on a demur. So the trial court really didn't get a chance to address it. This is a matter that. So why is he off the list? He's off the list because the reason for inclusion on the list is that the FTB still believes that it can find assets to collect from. And at some point, the FTB looked and looked and looked and was unable to find any assets for Mr. Franceschi. This man is a practicing lawyer with and he just adverted to all these people he hires in his law firm to do work. Your answer doesn't make a lot of sense to me. If he would like to challenge the reason he came off the list, you know, we're more than happy to address that on a complaint on a separate clause of action. That doesn't make a difference, though, as I understand in the FTB's view that even if he's not on the list, the result, the consequences of having been once on the list remain, is that right? Oh, exactly the same, right? In the D'Orio case, he says he's off the list, but he's still deprived of his medical license. That's correct because the statute, the appropriate reading of the statute is that once you're on the list, the only way to get off the list is to pay the tax, show that you can't pay the tax, or enter into a payment plan, or show that, yeah, those three, enter payment plan, pay the tax, show that you can't pay the tax. That's the way you get your license back. And that's the only way that the statute gives a taxpayer to get his license back. And we think that's a correct read of the statute. No one's ever pointed out what procedural due process problem there is with that. I see 15 minutes remaining, so I'm going to hand it over to my colleague, unless there is any questions. Good morning, Deputy Attorney General Laura Robbins. On behalf of Defendants Yee, Horden, Cohen, Sewell, and Yaroslavsky, I'll present argument related to the procedural due process issue. Elizabeth O'Donnell, my colleague, will cover the Fourth Amendment issue related to Defendants McKenzie and Fuller. We have a portion of time, since they all have approximately 10 minutes, and she'll have approximately 5 minutes. In this matter, Appellant Keith D'Orio's procedural due process rights were not violated by the suspension of his medical license as a serial tax offender. As I'll explain in further detail, Dr. D'Orio was provided all of the process that he was due. So I take it he has the same ability to pay and ask for a refund as counsel was saying regarding Mr. Franceschi, is that right? Yes, Your Honor. All right. So it's essentially the same. Is there any difference in the argument for D'Orio regarding the due process, the procedural due process issue? There isn't, Your Honor. So unless the panel has further questions, I'll yield my time to Ms. O'Donnell. All right. Yeah, sure. Thank you. Good morning, Your Honors. Deputy Attorney General Elizabeth O'Donnell. As co-counsel indicated, I will be addressing the Fourth Amendment issues on behalf of, excuse me, Medical Board Investigators McKenzie and Fuller. The two main questions, Your Honor, that appellant has raised in this case with regards to investigators Fuller and McKenzie have already been answered by this court. They were answered in 1990 in the case of Forster versus the County of Santa Barbara. Both legally and factually, the Forster case is almost identical to this case. Appellant is actually making the exact same argument. So what's the answer? Excuse me? What's the answer? The short answer, Your Honor, is there is no warrant, search warrant needed for an undercover investigation and that investigators Fuller and McKenzie are entitled to qualified immunity and plaintiff has, excuse me, appellant has not shown any type of deception which would invalidate the valid arrest warrant by which appellant was arrested. So opposing counsel relies on this email that was sent by a deputy district attorney. It was a little confusing what the sequence of events was. Can you explain that? Yes, Your Honor. What happened was, I'm sorry, the sequence of events as far as the obtaining of the warrant or the email coming to surface? So the email says that the investigation was based on the complainants before the undercover investigation. I will clarify that for Your Honor. The email is wrong. It was written a year after the events by somebody who was not involved in the events. What occurred was Agent Fuller, excuse me, sent to ADDA Fong his investigative report with all of the attachments, including the expert's report. In both the investigative report and in the expert's report, they make mention of the fact that the administrative investigation in this matter was initiated by way of the two complaints that were received that questioned whether appellant was mentally fit to practice medicine. Once that investigation was opened, it was learned, in fact, through materials provided by appellant himself, that his license had been suspended. And once it was suspended, then the question arose as to whether or not he was continuing to practice medicine despite the suspension of his license. Therefore, we now had two parallel investigations, an administrative one and a criminal one about the practice of law. All of that was in one report, which was submitted. Practice of medicine. Excuse me? Practice of medicine. Excuse me. Practice of medicine. All of that was submitted in the report that was submitted to ADDA Fong and then eventually Judge Solorzano, both of whom agreed with the contents and the opinion of the expert that was in the investigative report that appellant was, in fact, practicing medicine during these two undercover operations. So the part of the email, which of course we've objected to on the grounds that it's hearsay and it lacks foundation, that says that ADDA Fong was confused is actually erroneous. ADDA Fong testified that she only relied on the expert's report. And the expert's report was very clear that it had to do with the two undercover operations that investigator McKenzie took part of. And in fact, the dates on the warrant are specific to those two dates. Is his use, the doctor's use of the MD on his paperwork, is that enough for a violation of, I think it was, what was it, 2052? 2052A? Yeah. Is that enough for that? Yes, Your Honor. I apologize. Your Honor, if you look at Business and Professions Code 2052A, it basically prohibits the practice of medicine or holding yourself out to be a doctor or a medical doctor if you do not have a license. You then have to look at 2053.5 and 2054, and they more fully explain what is considered the practice of medicine. So while 2052 says you can't do it, these other statutes tell you what constitutes doing it. And included in that is holding yourself as a doctor, using MD behind your name, using doctor before your name. In this particular instance, we had numerous brochures that were made available to investigator McKenzie that were given to her, a membership agreement, appellant's business card. And then, of course, during the investigation, he said, I am a doctor. Your Honor, both the issues about the undercover investigation and, in fact, the issue about the probable cause for arrest are covered by the Forster case. And this circuit need look no further than its own decision in that case. So the predicate for the investigation of the doctor was complaints by his patients as to his mental stability or something like that? The predicate for the administrative investigation, yes, was complaints by two patients who questioned his fitness to practice medicine based upon his behavior. And the administrative investigation discovered that his license had been revoked because of the statute we've all been talking about? That is correct, Your Honor. And once that occurred, and it appeared that there may be a possibility that we had him continuing to practice medicine since in the paperwork that he presented to the medical board, which was then given to Investigator Fuller, he basically said he didn't believe that the suspension was a valid suspension. That then raised the question on whether he was continuing to practice medicine despite the suspension, which then, once it was looked into, then started the concurrent criminal investigation. Had he filed California income tax returns? My understanding is that he did not, Your Honor. That he was, in fact, assessed amounts that he was owed much in the same way that Mr. Franceschi was. Okay. Your Honor, this is an issue, excuse me, a situation where qualified immunity clearly needs to be applied here. Investigators McKenzie and Fuller were doing their job as they were supposed to. They did it correctly under the law. And appellant has shown no evidence whatsoever that there has been any type of judicial deception or recklessness or omissions that would justify that qualified immunity not be applied. The main argument is there wasn't a Fourth Amendment violation to begin with. Yes, Your Honor. There was, well, there's two distinct claims that the appellant is making. The first is as to the undercover investigation. No warrant was needed. No probable cause was needed. Investigator McKenzie was invited, informer. The law is very clear on that. The second one is as to the arrest itself. And as to the arrest itself, qualified immunity applies. And there has been no showing of anything that would... Defeat qualified immunity. Defeat qualified immunity, yes. Right. Your Honors, I will conclude unless you have any further questions. The application of qualified immunity in this matter is independent and not affected by this court's ruling on the validity of the statute under which Dr. Di Iorio's license was suspended. But regardless of the court's ruling on Business and Profession Code 494.5, the law is clear that investigators McKenzie and Fuller are entitled to qualified immunity. And the district court's granting of summary judgment in their favor was correct and it should be affirmed. Thank you. Thank you. Well, I'm hearing for the first time that there was both a criminal and an administrative investigation. I believe the record only bears out one investigation. And the issues with Dr. Di Iorio, the Fourth Amendment claims, they're replete with triable issues. The credibility of Investigator Fuller is very much at issue. We, in our opening brief, we quote at length from his deposition, the default duplicitous responses when asked about the probable cause leading up to believe that he was practicing medicine without a license. He couldn't articulate anything. But the record shows, it seems to me, as I read the record, it shows he was practicing medicine without a license. I mean, what's the dispute? He called himself a doctor, he had these cards, there was all this indicia around his office that he was a doctor, the agreement that the patients had to sign and on and on. Well, the agreement was for homeopathic care under CAM, which is perfectly legal. You can be a licensed AMD and practice CAM, which Dr. Di Iorio... Did he have business cards that identified him as an MD? Well, he is an MD. That's not a false statement. But he wasn't charged with that statute of using the initials AMD. He was charged with practicing medicine based upon his encounter with the undercover operative. Well, that statute does indicate that if you imply you're a doctor, that's enough to violate the statute. And so it's certainly reasonable to say that calling yourself an MD implies that you're a doctor. Well, you know, I think there's a First Amendment issue there. You know, there's a lot of people that retire from the practice of medicine... I don't think that's before us here. Well, this whole issue is not before the court, you know, and, you know, there's people that call themselves JD that aren't members of the bar. So I don't see anything wrong with that. But that's not the issue here. There's a very specific issue with regard to the charge of practicing without a license. And that had to do with a disputed fact. The undercover operative alleged that Dr. DiIorio offered to draw blood, which he vehemently denies. And that's the only... No, we're not talking about guilt. We're simply talking about probable cause. And your clients can deny facts, but that doesn't mean that the officers who swat the warrants or took the steps they did didn't have probable cause. Well, I asked Mr. Fuller at his deposition to do just that. Tell us what the probable cause was, and he couldn't do it. Well, that's not here nor there, because it's an objective standard. What he had in his mind is not determinative. It's an objective standard. We asked him for specific facts. I understand that, but that's neither here nor there. In any event, I believe that's a triable issue. But then there's the other issue that sits... Well, the big issue is, even if you're correct, why aren't these people entitled to qualified immunity? Because there was deliberate deception. I think the evidence... And I think there's a substantial inference based on the email from the district attorney. And when you look at the totality, the duplicitous deposition responses, the email from the district attorney, his own testimony that he was there for an hour and just sat there and said nothing, which is contradicted by the email, it's pretty clear there's an inference that a jury can find that he slanted the case. He presented a false case to confuse the DA to believe that the practice, the unlawful practice of medicine was related to those two patient complaints. The case is dropped, right? The case is dropped when they learn the true facts. But the harm is enormous. Dr. Di Iorio's condition of his bail had to close his CAM practice. He lost everything because of this, this one act. So it's, I think, just a triable issue that should be reversed. Could I go back to the question about the challenge to the statute? An opposing counsel says there was a remedy that could have been adopted after 2012, which is that you could have paid the amount that was assessed and then through a refund proceeding, you would have a full opportunity to challenge all of the assessments back to 1995. Well, I'm certain there might be some infinitesimal percentage of the population that can just write a check to avail themselves of that remedy, but that certainly isn't me, and it wasn't Dr. Di Iorio, and I highly doubt that anybody on that list- I thought you told us when you were up before that the amounts were just too small for you to bother with. Well, they were every year, but they've accumulated. They're now- So opposing counsel says the cost doesn't really matter, or ability to pay doesn't matter in that context, and he says there are some Supreme Court cases on point. He cited one, Modern Barber College. So the fact that it would be 350,000 or whatever it was, you'd have to pay and have a ability to challenge the entire amount, that itself doesn't create a due process issue. Well, I completely disagree with that. Well, that's the way it is in the federal level. If you want to contest your federal income taxes, you got to pay first. Well, that's true, but we're not talking just about contesting taxes. We're talking about a deprivation of a vested right that flows from these taxes that are in dispute. This is apples and oranges. I think counsel's conflated the issues. The issue here is the deprivation of a vested right. Well, you have the opportunity to challenge it initially, and then at the point where you understand the consequences, opposing counsel says you have another opportunity to challenge it, and you could challenge the full amount going back to 1995. And so between with those two, you do have an opportunity to collaterally challenge the assessments. Two answers to that. First of all, you got to have the money to do it. And secondly, that's not in the statute. The statute doesn't provide for that. The statute provides for no hearing opportunity whatsoever. We're talking about the constitutionality of the statute. Is it your position that the statutory remedy that your adversary rehearsed when he was up before us doesn't exist? If you want to challenge a tax, yes, there is, since the beginning of time, yes, that's a time-honored way of doing it. You pay in suit. You can do that. You can file suit. But it's your position that's inadequate. Well, it's inadequate here because none of those cases that counsel talked about, was there an issue of somebody's medical license or license to practice law or a driver's license being taken away? Those weren't at play there. It was dollars and cents, whether or not the tax is owed. Now, one of the problems here is, and counsel alluded to this, that even though you're off the list, you don't get your license back because that's, the statute provides for that. I think he said, and you can correct me if you have a different understanding, that the moment you pay these taxes, you get the license back. Well, that's what he says. But the predicate for this- I'm sorry, go ahead. Well, the predicate for the suspension is you gotta be on the list. If you're not on the list, they can't deprive you of the license. So if you're no longer on the list, they can't continue to withhold it. In fact, they won't give me back my driver's license, even though I'm not on the list. They won't give back Dr. Diario's medical license. I can't- The statute doesn't say though, that having once been on the list, once you're off the list and you get it back, it just says, if you're ever put on the list, then the professional society can suspend your license, or the DMV can suspend your license. There's no provision in the statute for a return once you're off the list. Well, there's no- The statute's completely silent as to this, but if you look at the purpose, the legislative purpose was to single out the largest tax debtors in the state for license deprivations. And in order for that to happen, you got to be on the list. So that's a prerequisite. So if you're no longer on the list, common sense tells us that you're not eligible for continued deprivation. Now there's no legislative history, and the statute's completely silent on this point. But I think fundamental fairness requires that if you're no longer on the list, for whatever reason, you can be taken off the list because they find you uncollectible. I heard that in deposition testimony from the PMK. You can be taken off the list because you file bankruptcy. So let's say you file bankruptcy, they take you off the list, but the taxes don't get discharged. But they don't put you back on the list, and they still withhold your license. So there's no remedy here. You're held in limbo, and you can't even go to another state. If you have your medical license suspended in California, no other state will give you one, even though it's a tax suspension, and you did nothing wrong. So I'm confused. Let me be sure that I understand this regime. Your adversary, I thought, said that once you pay the taxes, you get your license back the next day. Your position is that that does not happen and has not happened, with respect to yourself and your client. Well, I don't know, because I did not pay the amounts alleged. Neither did Dr. Di Iorio. So I don't know what would have happened if I had that kind of money sitting in the bank to write a check. I don't know what would have happened, to be very honest with you. And I don't know anybody that's ever just written a check to pay the taxes. You know, these are humongous amounts. And, you know, counsel talks about it casually. Well, well, you just pay the taxes and sue, but some of these are millions of dollars. You know, I just looked on the list yesterday that the number one debtor owes $26,260,000. That's, who can write a check for that? So- Well, we don't know how much money he made. But it's, the bottom line is the remedy is not in the statute. So unless the court has any other questions, I'll submit. Apparently not. Thank you. Thank you, Your Honors. Thank you for your arguments. The cases of Franceschi v. Chang and D'Orio v. Yee are submitted.
judges: Parker, Hawkins, Ikuta